UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| RAFEAL BEAN #253562, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:07-cv-113 |
| | ) | |
| v. | ) | Honorable Wendell A. Miles |
| | ) | |
| GREG MCQUIGGIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.  The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has filed an amended complaint as provided for by the March 4, 2008 order of this court.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Greg McQuiggin, Linda Tribley, W. Luetzow, W. Jondreau, Terry Smith, Unknown LeClaire, John

Perry, Kevin Lampela, P. Tussing, and James MacMeekin. The Court will serve the complaint against Defendant Thomas Perttu.

**Discussion**

I.   Factual allegations

Plaintiff Rafeal Bean, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this amended complaint against Defendants Warden Greg McQuiggin, Deputy Warden Linda Tribley, Resident Unit Manager Terry Smith, Assistant Deputy Warden P. Tussing, Assistant Resident Unit Manager Thomas Perttu, Assistant Resident Unit Manager Unknown LeClaire, Sergeant John Perry, Resident Unit Officer Kevin Lampela, and Regional Prison Administrator James MacMeekin.[1]

In his original and amended complaints, Plaintiff alleges that he is currently being housed in administrative segregation on punitive detention. On September 11, 2006, Plaintiff received a notice showing that the SCC (Security Classification Committee) had requested that Plaintiff continue to be housed in segregation. When Plaintiff spoke to Defendant LeClaire about the notice, he was told that he would not be reclassified because of the serious nature of his offense. Defendant LeClaire stated that Plaintiff had been found guilty of grabbing an officer through the slot at JMF (Southern Michigan Correctional Facility). Plaintiff claims that this incident never happened and that the falsification of such an incident violated his rights under the Fourteenth Amendment.

Plaintiff filed a grievance regarding his confinement in administrative segregation, which was denied. Plaintiff subsequently appealed the denial of his grievance to

---

[1] It appears that Plaintiff is dropping his claims against Assistant Deputy Warden W. Luetzow and Assistant Deputy Warden W. Jondreau, as well as against the Jane and John Doe Defendants.

- 2 -

step II and III.  On October 8, 2006, Plaintiff was placed on upper slot restriction by Defendant Lampela with no justification.  Plaintiff filed a grievance on this incident, but his step II appeal came up missing.  During the upper slot restriction, Plaintiff was subjected to the denial of meals and was told to go to the back of his cell in order to be fed through the bottom slot.  Plaintiff claims that he was treated in a degrading manner, as Defendant Lampela refused to serve him on some days and on other days would make Plaintiff cross his legs and put his "butt" in the air in order to get his trays.  Plaintiff contends that when a white inmate receives a threatening behavior he is not subjected to such treatment.  Plaintiff also states that Defendant Lampela occasionally turned Plaintiff's tray upside down on the floor.

Plaintiff alleges that on September 7, 2006, Defendant Lampela placed him on a permanent razor restriction, which prevents Plaintiff from shaving on shower days.  Defendant Lampela claimed that Plaintiff had thrown his razor at Resident Unit Officer Velmer through the shower slot and that this had struck Velmer on the arm, causing a laceration.  Plaintiff claims that he is unable to use hair cream remover (magic shave) because he has sensitive skin.  On January 17, 2007, Defendant Smith wrote an administrative Notice of Intent to uphold the razor restriction and on January 26, 2007, Defendant Perttu upheld the Notice of Intent.  Defendant Tribley approved the restriction without any further review, which violates MDOC policy and rules.  Plaintiff filed a grievance and appealed the denial to step III, to no avail.  Plaintiff alleges that Defendant Tussing knowingly and willfully refused to act on Plaintiff's complaints regarding his continued mistreatment by prison officials.

On November 17, 2006, Plaintiff was moved by Defendant Smith for retaliatory reasons.  Plaintiff states that he had previously filed a grievance on staff under Defendant

Smith's control, claiming that they had assaulted him and that Defendant Smith was aware of this grievance.  In addition, in his amended complaint, Plaintiff contends that Defendant Smith failed to protect him from a "hostile environment," and that this resulted in the assault.  Plaintiff states that he was placed on A-Wing, which houses mentally ill prisoners, where the noise level is high and the inmates are quite unstable.  Plaintiff asserts that this unit is unsanitary, the odor is bad, and that Plaintiff came into contact with the H. pylori bacteria while confined in this unit.[2]  Plaintiff states that he tested positive for H. pylori as a result of being served his food through the lower slot.

Plaintiff claims that he is black and that he was treated differently than white inmates when he received loss of privileges for no reason.  Plaintiff alleges that on January 11, 2007, Defendant Perry falsely claimed that Plaintiff threatened him.  Plaintiff states that Defendant Perry gave him his tray through the bottom slot, even though Plaintiff was not on upper slot restriction at the time.  When Defendant Perry picked up the tray, it became stuck in the slot and he had to push it back into Plaintiff's cell.  During this time, Defendant Perry claimed that Plaintiff "rustled" the door, despite the fact that Plaintiff was actually at the back of the cell.  Defendant Perry subsequently gave Plaintiff a threatening behavior misconduct. Plaintiff claims that Defendant Perry's conduct in arbitrarily imposing an upper slot restriction on him violates MDOC policy and procedure.

Plaintiff claims that Defendant Perttu interfered with his outgoing legal mail, which caused his criminal appeal to the Michigan Supreme Court to be rejected as untimely in

---

[2]This bacterium also is the most common cause of ulcers worldwide. H. pylori infection is most likely acquired by ingesting contaminated food and water and through person to person contact.  *See* http://www.medicinenet.com/helicobacter_pylori/article.htm.

January of 2007. Plaintiff offers a copy of the order rejecting his appeal in support of this assertion. (*See* Exhibit E to Plaintiff's amended complaint, docket #13.) Plaintiff states that Defendant Perttu took this action because he wished to retaliate against Plaintiff for filing grievances. On January 17, 2007, Defendant Smith wrote a Notice of Intent on Plaintiff, with regard to the permanent razor restriction, claiming that Plaintiff had inflicted a laceration on Resident Unit Officer Velmer when he threw his razor at him. On January 26, 2007, Defendant Perttu upheld the Notice of Intent on the razor restriction for the second time in violation of MDOC policy. On February 22, 2007, Defendant McQuiggin denied Plaintiff's step II grievance appeal regarding this issue. On March 23, 2007, Prisoner Affairs Office Employee James Armstrong denied Plaintiff's step III grievance appeal.

Plaintiff also alleges that the named defendants engaged in a conspiracy to violate Plaintiff's due process and equal protection rights, as well as his right to access to the courts, and to be free from cruel and unusual punishment and retaliation. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a

source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff is claiming that Defendants' conduct was motivated by desire to retaliate against him for his use of the grievance system. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely

alleges the ultimate fact of retaliation in this action. He has alleged no facts to support his conclusion that Defendants' conduct was motivated by a desire to retaliate for Plaintiff's use of the grievance system. Accordingly, his speculative allegations fail to state a claim.

Plaintiff claims that his continued incarceration in administrative segregation violates his procedural due process rights. A review of the exhibits to Plaintiff's amended complaint (docket #13) reveals that as a result of Plaintiff's grievances, his prison file was corrected to reflect the true reason for his classification to administrative segregation. In the step II response, Defendant McQuiggin stated:

> The Step I grievance, response and this appeal have been reviewed. According to the grievant's [Assistant Resident Unit Supervisor], the grievant's CSJ-283 monthly administrative segregation review has been changed to accurately reflect the true reason the grievant was classified to segregation on 11/29/99 at SLF. This issue is considered resolved.

(*See* step II response to Grievance No. 06-10-03356, dated November 8, 2006.) A review of the exhibits shows that Plaintiff was classified to administrative segregation on November 29, 1999, because he refused to take his headgear off for a shakedown during general population chow lines while at the St. Louis Correctional Facility. (*See* October 15, 2006, and July 15, 2007, requests for administrative segregation continuance, Exhibits 2 and 3, docket #13.) In addition, the July 15, 2007, request for administrative segregation continuance reveals that Plaintiff had demonstrated assaultive behavior towards staff on numerous occasions since his placement in administrative segregation. (*See* July 15, 2007, request for administrative segregation continuance, Exhibit 3, docket #13.)

To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the Due Process Clause, the Court must

determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit repeatedly has found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (considering two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (involving inmate serving a life sentence who was placed in segregation after serving thirty days of detention for a misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Although plaintiff states that his placement in segregation has been "atypical and significant," he merely uses the legal jargon and presents no factual allegations to support his conclusion. The only allegation he presents regarding his segregation is that its duration has been for more than eight years. The Sixth Circuit has recognized that duration alone may, in extreme circumstances, cause administrative segregation to rise to the level of an "atypical and significant"deprivation that implicates a protected liberty interest. *See Harden-Bey v. Rutter*, 524 F.3d 789 (6th Cir. 2008) (holding that allegations that a prisoner has been indefinitely confined to administrative segregation for more than three years states a procedural due process claim).

The court notes that the Plaintiff in *Harden-Bey* had been in administrative segregation for three years and alleged that his placement was "indefinite" and that prison officials refused to give him a hearing to explain his continued detention. *Id.* at 793. In *Harden-*

*Bey*, the court stated that while the prison may have ample reasons for segregating Harden-Bey from the general prison population and may indeed have given him all of the procedural protections to which he is entitled before and after this placement, it had no way of knowing whether that was so based solely on Harden-Bey's complaint. In this case, Plaintiff has been confined to administrative segregation for more than eight years. Therefore, in light of *Harden-Bey*, it appears that a liberty interest is implicated by his placement. However, unlike the Plaintiff in *Harden-Bey*, Plaintiff offers documents showing that his continued confinement in administrative segregation was reviewed pursuant to MDOC Policy Directive 04.05.120 ¶ KKK, which states:

> Wardens shall personally interview each prisoner in their respective institutions who has been confined in administrative or punitive segregation for six continuous months. If the prisoner continues in administrative or punitive segregation beyond the first six month period, the Warden shall interview the prisoner every six months thereafter until the prisoner is released from administrative or punitive segregation. The interviews shall be conducted out-of-cell unless the prisoner chooses not to participate. If the prisoner chooses not to participate, the Warden shall personally visit the prisoner to encourage his/her participation. The interview, or the prisoners' non-participation, shall be documented on the Segregation Behavior Review form (CSJ-283).

Therefore, the court concludes that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990). The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or

property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9, 100 S. Ct. 553, 558, n. 9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125, 110 S. Ct. at 983 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70, 94 S. Ct. 2963, 2981 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). Accordingly, Plaintiff's due process claim regarding his continued classification to administrative segregation lacks merit.

In addition, Plaintiff has failed to suggest that his razor restriction and upper slot restriction impose an atypical and significant hardship. As noted above, some restraints might be so extreme as to implicate rights arising directly from the Due Process Clause itself. *Sandin*, 515 U.S. at 483-484 (internal citations omitted). In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Plaintiff's remaining complaints are that he cannot use a razor to shave on shower day and was required to receive his food through the lower slot while he stayed at the back of his cell while on upper slot restriction. Such concerns fail to rise to the level of a due process violation.

In addition, to the extent that Plaintiff is claiming he received false misconduct tickets, these claims are barred by the holding in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Plaintiff claims that he was falsely convicted of assault and threatening behavior, major

misconduct tickets. He also appears to claim that evidence from other witnesses should have been explored instead of relying on a staff member's statement about the incident. The Supreme Court has held that a claim for declaratory relief and monetary damages that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decision maker in a misconduct hearing). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges), *cert. denied*, 122 S. Ct. 1795 (2002). *See also Muhammad v. Close*, 540 U.S. 749 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the months of his convictions. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Misconduct Report is received. MICH. COMP. LAWS § 791.254; Policy Directive 03.03.105, ¶ DDD. Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[3] Accordingly, because Plaintiff has not shown that his convictions have been

---

[3] A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

invalidated, his claims are not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, No. 02-2460, 2004 WL 1326066 (6th Cir. June 10, 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, No. 03-1411, 2003 WL 22976618 (6th Cir. Dec. 8, 2003) (same); *Harris v. Truesdell*, No. 03-1440, 2003 WL 22435646 (6th Cir. Oct. 23, 2003) (*Heck*-barred claim fails to state a claim and is frivolous).

Plaintiff also appears to be claiming that Defendants' conduct violated his rights under the Eight Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich* , 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff also claims that the conditions and restrictions imposed upon him have caused him mental distress in violation of his Eighth Amendment rights. Plaintiff cites segregation, upper slot restriction and permanent razor restriction. Plaintiff also claims that the

other segregation prisoners are disruptive and noisy. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9(1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000), *cert. denied*, 531 U.S. 1023 (2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). Moreover, Plaintiff cannot not bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Watson v. McClanahan*, No. 99-6124, 2000 WL 922899, at *2 (6th Cir.

June 27, 2000); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000).  As such, Plaintiff fails to state an Eighth Amendment claim against Defendants.

Finally, Plaintiff appears to be claiming that Defendant Perttu interfered with his outgoing mail, which caused a criminal appeal to the Michigan Supreme Court to be rejected as untimely.  This claim is not clearly frivolous.  Therefore, it may not be dismissed at this time.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Greg McQuiggin, Linda Tribley, W. Luetzow, W. Jondreau, Terry Smith, Unknown LeClaire, John Perry, Kevin Lampela, P. Tussing, and James MacMeekin will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendant Perttu with regard to Plaintiff's access to courts claim only.

An Order consistent with this Opinion will be entered.


Dated: September 2, 2008                                    /s/ Wendell A. Miles
                                                            Wendell A. Miles
                                                            United States District Judge